UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALBRIDGE ALDINGER CO.,

    Plaintiff,

v.                                                              Case No. 06-CV-11161-DT

AON RISK SERVICES, INC. OF
PENNSYLVANIA a/k/a AON RISK SERVICES
OF PA,

    Defendant.
                                                    /

**ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS**

Pending before the court is Defendant Aon Risk Services, Inc. of Pennsylvania's ("Aon's") "Motion to Stay Proceedings." This motion has been fully briefed and the court concludes that a hearing on the motion is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion to stay proceedings.

**I. BACKGROUND AND SUBSTANTIVE LAW RELEVANT TO PLAINTIFF'S CLAIM**

**A. The Federal and State Litigation**

Plaintiff Walbridge Aldinger Co. ("Walbridge") filed the federal action on March 17, 2006 pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332. Walbridge is a general contractor and construction manager. (Compl. ¶ 5; Answer ¶ 5.) Aon is, among other things, a provider of insurance brokerage services, and has brokered surety services on Walbridge's behalf in the past. (Answer ¶ 6.) Walbridge alleges that it entered into a written contract with DVA Sports, LLC ("DVA Sports") in August 2004, pursuant to which Walbridge would design and construct the Bradenton-

Sarasota Arena ("Project") in Manatee County, Florida. (Compl. ¶ 7.) According to Walbridge, DVA Arena, LLC ("DVA Arena") owns the property on which the Project was to be built. (Def.'s Ex. A at 2, State Court Compl.) Walbridge also alleges that it asked Aon to arrange the issuance of a "conditional labor and material payment bond and a performance bond." (Compl. ¶ 8.) Walbridge contends that "Aon failed to follow the directions received from Walbridge and instead of supplying a conditional payment bond, it supplied an unconditional payment bond." (*Id.* ¶ 10.) Walbridge further alleges that after construction began on the Project, DVA[1] "failed to pay Walbridge for its work." (*Id.* ¶ 12.) Walbridge claims that Aon breached its contract with Walbridge, causing Walbridge to face "significant liability to its subcontractors and suppliers under the labor and material payment bond" and that the "damage to Walbridge as a result . . . may exceed $5,300,000." (*Id.* ¶¶ 14, 16.)

Before filing the federal action, Walbridge filed suit in the Circuit Court of the Twelfth Judicial Circuit in Manatee County, Florida (Case #2005-CA-006638) on December 21, 2005 against DVA Arena and Landmark Bank of Florida. (Def.'s Ex. A at 2, State Court Compl.) In the state court action, Walbridge seeks to enforce a claim of lien against DVA Arena for monies allegedly owed under a Construction Agreement, and also pleads breach of contract and quantum meruit claims. (*Id.* at 2-4.) Walbridge further asserts claims against Landmark Bank of Florida for breach of lender duties and for an equitable lien. (*Id.* at 5-7.)

---

[1] Walbridge does not specify which DVA entity is at issue, but that distinction does not appear relevant to the pending motion.

2

## B.  Florida Construction Lien Law

The parties agree that the Florida Construction Lien Law, Fla. Stat. Ann. § 713.06, is relevant to the resolution of Plaintiff's breach of contract claim.  (*See* Def.'s Br. at 1; Pl.'s Resp. Br. at 7.)  Under the Florida Construction Lien Law, certain materialmen, laborers, and subcontractors will have a lien on real property improved for any money that is owed to them for labor, services or materials furnished in accordance with their contracts or subcontracts.  Fla. Stat. Ann. § 713.06.  In order to exempt owners from such liens, the contractor[2] may secure a payment bond before commencing construction.  *Id.* § 713.23.

Under Florida law, an owner's failure to pay will generally not modify or delay the general contractor's duty to pay subcontractors.  *OBS Co. v. Pace Constr. Co.*, 558 So. 2d 404, 405 (Fla. 1990) ("[I]ntent in most cases is that payment by [an] owner to [a] subcontractor is not a condition precedent to the general contractor's duty to pay the subcontractors.  This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor.")  However, general contractors may "shift the risk of pay failure by the owner to the subcontractor" if the subcontract agreement unambiguously expresses that payment to the subcontractor will be conditioned on the contractor's receipt of payment from the owner.  *Id.*

Such "pay when paid" language, though it may prevent collection from the contractor until the contractor is paid by the owner, does not automatically prevent the

---

[2] Defendant asserts that Walbridge, as a design builder, is equivalent to a "contractor" for the purposes of the Florida Construction Lien Law.  (Def.'s Br. at 1, n. 2.)

subcontractor from collecting from a surety who has issued a payment bond. *Id.* at 407. The Florida Supreme Court held that "even if [it] found that [a] subcontract unambiguously shifted the risk of [an] owner's nonpayment to [the subcontractor], [it] would still hold the sureties liable under the terms of the payment bond." *Id.*; *see also Everett Painting Co. v. Padula & Wadsworth Constr., Inc.*, 856 So. 2d 1059, 1061 (Fla. Dist. Ct. App. 2003) ("A payment bond is a separate agreement from the contract and an inability to proceed against [the contractor] does not necessarily prevent recovery on the bond.") (citation omitted).

A Florida statute, however, provides for the issuance of conditional payment bonds, whereby "the duty of the surety to pay lienors will be coextensive with the duty of the contractor to pay." Fla. Stat. Ann. § 713.245. In order to issue a conditional payment bond, the surety must, among other things, clearly indicate on the front page of the bond that payment is conditioned on the contractor's receipt of payment from the owner. *Id.*

## II.  STANDARD

A motion to stay proceedings in light of earlier filed and ongoing parallel state court proceedings is governed by the abstention doctrine set forth by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court held that federal courts may abstain from hearing a case based on the pendency of similar state court litigation in certain "exceptional" circumstances. *Colorado River*, 424 U.S. at 817-18; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). "[D]espite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' . . .

considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine*, 160 F.3d at 339 (quoting *Colorado River*, 424 U.S. at 817).

Declining jurisdiction under *Colorado River* rests on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. These considerations create a narrow exception where courts may dismiss or stay proceedings in deference to parallel state court litigation. *See Heitmanis v. Austin*, 899 F.2d 521, 527 (6th Cir. 1990).

The threshold question in abstention pursuant to *Colorado River* is whether there exists a proceeding in state court parallel to the federal court proceeding. *Romine*, 160 F.3d at 339; *see also Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Without such a parallel case, the district court will have nothing in favor of which to abstain. *Baskin v. Bath Twp. Board of Zoning*, 15 F.3d 569, 571 (6th Cir. 1993) (reversing dismissal on *Colorado River* grounds where the two actions arose out of the same basic facts, but different relief was sought). For federal and state cases to be considered parallel, the state court proceedings need not be identical; it is "enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (citations omitted); *see also Lumen Constr. v. Brant Constr.*, 780 F.2d 691, 695 (7th Cir. 1985) (rejecting an argument for a requirement of formal symmetry where the district court could reasonably have concluded that all claims were likely to be finally determined in the state court action). However, a suit will only be "parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another

forum." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (quoting *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 (7th Cir. 1979)) (finding that parallel cases existed where parties' interests were identical).

If the cases are truly parallel, then the state action will be a vehicle to resolve all issues raised in the federal action. *See Baskin*, 15 F.3d at 572. In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Supreme Court held that

> [w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this*, it would be a serious abuse of discretion to grant the stay or dismissal at all. . . . Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive portion of the case, whether it stays or dismisses.

*Id.* at 28 (emphasis added) (internal citations omitted); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

If a federal court determines that a state case is parallel, it must then examine a number of factors to determine whether exceptional circumstances exist such that judicial economy and federal-state comity warrant abstention. *Romine*, 160 F.3d at 340-41; *see Colorado River*, 424 U.S. at 818-19. The Sixth Circuit has summarized the various factors to consider in the *Colorado River* analysis:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained[; as well as] (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* (internal citations omitted).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Moses H. Cone*, 460 U.S. at 15-16.

### III.  DISCUSSION

In reviewing a motion to stay proceedings, the court must first determine if there is a parallel state proceeding that "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *See id.* at 28; *Romine*, 160 F.3d at 339.  A suit will only be "parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum."  *Interstate Material*, 847 F.2d at 1288 (quoting *Calvert*, 600 F.2d at 1229).  As discussed above, for federal and state cases to be considered parallel, the state court proceedings need not be identical; it is "enough if the two proceedings are substantially similar."  *Romine*, 160 F.3d at 340.

Defendant argues that "this case should be stayed so that the Florida [c]ourt can determine the potential damages, if any, . . . which Walbridge may be entitled to receive from Aon, and to prevent the possibility of a double recovery by Walbridge."  (Def.'s Mot. Br. at 6.)[3,4]  The court, however, concludes that the parties in the federal and state

---

[3] Contrary to Defendant's assertion that its motion "does not seek this [c]ourt's abstention of jurisdiction" (Def.'s Reply Br. at 1), the Supreme Court has previously characterized a stay as being "as much a refusal to exercise federal jurisdiction as a dismissal," *Moses H. Cone*, 460 U.S. at 28.  The Court further indicated that the abstention doctrine serves as the basis for both a district court's "declin[ing] to exercise [and] *postpon*[*ing*] the exercise of its jurisdiction."  *Id.* at 14 (emphasis added).

[4] The court is unpersuaded by Defendant's arguments that the possibility of "double recovery" counsels the abstention of federal jurisdiction.  *Cf. Colorado River*,

7

cases here are not "substantially similar."  *See Romine*, 160 F.3d at 340 (finding that there was no parallel proceeding where the defendant officials in two proceedings were from different government entities).  Though Walbridge is the plaintiff in both actions, the named defendants are entirely different.  The insurance broker, Aon, is the sole defendant in the case at hand, while a property owner (DVA Arena) and lender (Landmark Bank of Florida) are the only defendants in the state case.

Moreover, the court finds that the federal and state cases do not concern substantially the same issues.  *See Interstate Material*, 847 F.2d at 1288.  While it is true that Walbridge has pleaded a breach of contract claim in each case, the respective claims allege breaches of *different* contracts: the one at issue here is between Walbridge and Aon, and the other is between Walbridge and the property owner.  Also, the court believes that resolution of the issue of Aon's liability to Walbridge, in light of Walbridge's assertion that Aon delivered an unconditional payment bond as opposed to an agreed upon conditional payment bond, will require finding facts beyond those implicated in the state action.  Even if Walbridge is correct that "discovery in the Florida [l]awsuit relating to work completed on the Project [ ] will necessarily be duplicative of discovery in this case" (*see* Def.'s Reply Br. at 3), this alone is not enough to modify

---

424 U.S. at 816 ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."); *see also Riley v. Simmons*, 45 F.3d 764, 776 (3d. Cir. 1995) (quoting *Hayes v. Gross*, 982 F.2d 104, 109 (3d. Cir. 1992)) (noting that a risk of double recovery was not a sufficient reason for *Burford* abstention: "[T]he district court will be required to evaluate the prospect of double recovery in the specific fact context presented by plaintiff's case on damages.  It will suffice for present purposes to conclude, as we do, that double recovery is not inherent in plaintiff's theory of the case, and accordingly, that recovery without duplication is possible.").  If the court finds that Aon is liable in the case at bar, it would then be expected to consider damages in light of *all* the relevant facts.  *Cf. id.*

"the virtually unflagging obligation of [this court] to exercise the jurisdiction given [to it]." *See Colorado River*, 424 U.S. at 817.  Defendant also argues that "this lawsuit is parallel to the Florida [l]awsuit [because] it involves the same pertinent issue of whether Walbridge is entitled to the monies sought, irrespective of the theory of recovery." (Def.'s Reply Br. at 5.)  The court is unpersuaded that such a broad view of the "pertinent issue" is appropriate; the existence of different theories of recovery in the federal and state cases militates against a finding of parallelism.  *See Baskin*, 15 F.3d at 571.  Instead, the court views the salient issue in the pending litigation more narrowly, i.e., whether Aon breached it contract with Walbridge, and, if so, what damages resulted therefrom.

Additionally, the court concludes that the state action is not parallel because it would not be an adequate vehicle for the complete and prompt resolution of the issues between the parties.  *See Moses H. Cone*, 460 U.S. at 28.  As previously noted, Walbridge has not pleaded a breach of contract claim -- nor any claim -- against Aon in the state case.  Consequently, the state action could not possibly resolve the *claim* pending in the present matter. The Florida court will have no occasion to determine either Aon's liability or the extent of any damages that may have resulted.[5]  Therefore,

---

[5] Aon argues that if Walbridge "collects the full amount of the subcontractor claims, plus pre-judgment interest [from DVA under the state action] . . . it would be made 'whole,' and would not be entitled to any recovery against Aon."  (Def.'s Mot. Br. at 5.)  The court is not persuaded by this argument.  Generally, "[t]he law presumes damages from a breach of a contract, and at least nominal damages will be awarded." 22 Am. Jur. 2d *Damages* § 17.  Although the court has not focused at this early stage of the litigation on the issue of which state's law is applicable to the parties' dispute, Florida law comports with the general trend that, at minimum, nominal damages will be available in a successful breach of contract action.  *See Destiny Constr. Co. v. Martin K. Eby Constr. Co.*, 662 So. 2d 388, 390 (Fla. Dist. Ct. App. 1995) (holding that in the absence of actual damages, a party would still be entitled to recover nominal damages

the court harbors a substantial doubt that the state action could completely and promptly resolve the parties' issues, and accordingly concludes that it would be a "serious abuse of discretion" to grant the stay.  *See id.*  Plaintiff's federal and state cases are not parallel actions.  *See Crawley*, 744 F.2d at 31.

Because the court has found that there is no parallel state proceeding that could support *Colorado River* abstention, the court need not consider whether there are "exceptional circumstances" counseling towards abstention in this case.  *See id*.

## IV.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Defendant's "Motion to Stay Proceedings" [Dkt. # 7] is DENIED.

       S/Robert H. Cleland  
       ROBERT H. CLELAND  
       UNITED STATES DISTRICT JUDGE

Dated:  August 16, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 16, 2006, by electronic and/or ordinary mail.

       S/Lisa Wagner  
       Case Manager and Deputy Clerk  
       (313) 234-5522

---

upon a showing of breach of contract); *see also Onontario of Florida, Inc. v. R.P. Trucking Co.*, 399 So. 2d 1117, 1117 (Fla. Dist. Ct. App. 1981).  Without addressing the likelihood of an eventual recovery in the state action, the court acknowledges Walbridge's statement that "Aon's argument . . . presumes that a payment will be received from the owner. . . .  With the owner believed to be a single purpose entity and with other parties seeking to exert a claimed priority to the property, any recovery from the owner is purely speculative."  (Pl.'s Resp. Br. at 7.)

S:\Cleland\JUDGE'S DESK\C1 ORDERS\06-11161.WALBRIDGE.StayingProceedings.2.wpd